## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## EASTERN DIVISION

MICHAEL LAVERN BOYD                                        PLAINTIFF
ADC #115890

V.                        No. 2:17CV00004-BSM-JTR

GREG RECHCIGL, AHSA,
East Arkansas Regional Unit, *et al.*                      DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States Chief District Judge Brian S. Miller. You may file written objections to all or part of this Recommended Disposition. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommended Disposition. If you do not file objections, Judge Miller can adopt this Recommended Disposition without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

## I. Introduction

On January 10, 2017, Plaintiff Michael Lavern Boyd ("Mr. Boyd") filed a Complaint alleging that, while he was incarcerated in the East Arkansas Regional Unit ("EARU") of the Arkansas Department of Correction ("ADC"), he received inadequate and delayed medical care for symptoms related to his lower bowel, which

were causing him pain and periodic blood in his stool. *Doc. 2.* In his Amended Complaint, Mr. Boyd named as Defendants: Nurse Amanda Sackett, who saw Mr. Boyd one time, on October 23, 2016; Dr. Kenneth L. Holder; and Greg Rechcigl ("Mr. Rechcigl"), who reviewed and denied Grievance EA-16-01463, at Step Two of the ADC's exhaustion process (hereinafter referred to collectively as "Defendants"). *Doc. 6.* Between June and December 2016, all of the Defendants were employed by Correct Care Solutions ("CCS"), the medical provider for the EARU.

At the time Mr. Boyd filed this action in early January 2017, he had initiated only one grievance, EA-16-01463, which complained about the medical treatment he was receiving for the problems with his lower bowel. On December 6, 2016, Mr. Rechcigl reviewed that grievance and found no substantive basis for Mr. Boyd's complaints. Among other things, Mr. Rechcigl noted that, on November 10, 2016, Mr. Boyd was examined and given a colonoscopy by Dr. Samad, a gastroenterologist in private practice in Pine Bluff Arkansas.[1] *Court's Ex. 1 at 2 & 4.*

On December 7, 2016, Mr. Boyd appealed Mr. Rechcigl's denial of grievance EA-16-1463 to Rory L. Griffin ("Mr. Griffin"), the ADC Deputy Director of Health

---

[1] Based on his examination of Mr. Boyd's lower colon, Dr. Samad prescribed mesalamine, a medication for mild to moderate ulcerative colitis, and HC (hydrocortisone) suppositories, which generally are given to treat hemorrhoids. *See* https://www.drugs.com.

Services. On December 22, 2016, Mr. Griffin rejected Mr. Boyd's appeal on procedural grounds, because his grievance appeal papers did *not* include the Unit Level Grievance, a document created on an ADC form captioned "Attachment I." In addition, Mr. Griffin rejected the appeal because Mr. Boyd did not include his "name, ADC#, and/or date" on Attachment IV.[2] *Court's Ex. 1 at 2; Court's Ex. 2 at 3-4.*

On June 27, 2017, I filed a Recommended Disposition granting Defendants' Motion for Summary Judgment (*Doc. 34)* on the ground that Mr. Boyd failed to exhaust his administrative remedies. Specifically, I found that Mr. Boyd: (1) did not include his Unit Level Grievance (Attachment I) among the documents he submitted to Mr. Griffin, as part of his appeal of Mr. Rechcigl's Step Two resolution of Grievance EA-16-01463; *and* (2) did not sign his "name, ADC#, and/or the date" on Attachment IV, the other document he was required to complete and submit as part of his appeal. *Doc. 41*. Both of those deficiencies were noted by Mr. Griffin on

---

[2]Attachment IV is the ADC form used by the Step Two decision-maker, in this case Mr. Rechcigl, to provide his reasons for granting or denying the grievance. *See Court's Ex. 2 at 3.* Attachment IV also contains "Inmate's Appeal" instructions and space for the inmate to provide his grounds for appealing the Step Two decision to a Deputy Director of the ADC. For medical grievances, an inmate appealing the Step Two decision must mail his appeal papers to Mr. Griffin, the Deputy Director for Health Services. Those appeal papers must include Attachment I and Attachment IV. *See also* ADC Adm. Dir. 14-16 § IV(F)(7) & (G) ("AD 14-16") (*Doc. 36, Ex. A, Att. 1).*

Attachment V, which rejected Mr. Boyd's appeal on procedural grounds.[3]

On July 27, 2017, United States Chief District Judge Brian S. Miller entered an Order and Judgment adopting my Recommended Disposition and dismissing Mr. Boyd's Complaint, without prejudice. *Doc. 45.*

On August 3, 2017, Mr. Boyd filed a Notice of Appeal to the United States Court of Appeals for the Eighth Circuit. *Doc. 48.*

On December 28, 2018, the Eighth Circuit entered a *per curiam* decision reversing the order granting summary judgment. *Boyd v. Doe,* 746 Fed. Appx. 599 (8th Cir. 2018) (*Doc. 56).* After noting that Mr. Boyd's grievance appeal was rejected because he "did not send … the unit level grievance form [Attachment I]" and failed to include "his name, his inmate number, and the date" on Attachment IV, the Court held there was a material dispute "about whether Boyd complied with the exhaustion requirement, *either* by submitting all of the required attachments at the appeal stage *or* by submitting whatever attachments were available to him after officials failed to return some forms to him with the decision on his grievance." *Id.* at 600 (emphasis added).

On February 6, 2019, Judge Miller entered an Order vacating the decision to

---

[3]Attachment V is an ADC form captioned "Acknowledgment of Grievance Appeal or Rejection of Appeal." If procedural defects are identified, a box or boxes are checked to note the procedural deficiency, and then the appeal is rejected. *See Court's Ex. 2 at 4*; *see also* AD 14-16 § IV(G)(6).

grant summary judgment and directing the Clerk to reopen the case. *Doc. 60.* As a result, Defendants' Motion for Summary Judgment, based on Mr. Boyd's alleged failure to exhaust, remains pending. *Doc. 34.*

On April 17, 2019, I conducted an evidentiary hearing to resolve the disputed facts related to the exhaustion issue as directed by the Eighth Circuit in its December 28, 2018 decision.[4] Mr. Boyd, who appeared *pro se,* testified that he had fully and completely exhausted his administrative remedies *by including the Unit Level Grievance (Attachment I) among the appeal papers he mailed to Mr. Griffin on December 7, 2016.*

Mr. Boyd called one witness, Steven McArthur ("Mr. McArthur"), who became Mr. Boyd's cellmate in the EARU *in January of 2017*. It is undisputed that everything Mr. Boyd did to exhaust Grievance EA-16-01463 occurred *before* December 31, 2016. In his testimony, Mr. McArthur conceded that he had no

---

[4]Disputed questions of fact related to the PLRA's exhaustion requirement are threshold issues that should be decided by the trial court, after it conducts an evidentiary hearing. *See Lee v. Willey,* 789 F.3d 673, 677-78 (6th Cir. 2015) ("[D]isputed issues of fact regarding exhaustion under the PLRA presented a matter of judicial administration that could be decided in a bench trial."); *Albino v. Baca,* 747 F.3d 1162, 1170-71 (9th Cir. 2014) (describing procedure to be followed); *Dillon v. Rogers,* 596 F.3d 260, 272 (5th Cir. 2010) ("Since exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, we conclude that judges may resolve factual disputes concerning exhaustion without the participation of a jury."); *Pavey v. Conley,* 544 F.3d 739, 741 (7th Cir 2008) ("Juries decide cases, not issues of judicial traffic control. Until the issue of exhaustion is resolved, the court cannot know whether it is to decide the case or the prison authorities are to."); *accord Messa v. Goord,* 652 F.3d 305, 309 (2d Cir. 2011); *Drippe v. Tobelinski,* 604 F.3d 778, 782 (3d Cir. 2010); *Bryant v. Rich,* 530 F.3d 1368, 1374-77 (11th Cir. 2008).

personal knowledge about any of the facts and circumstances surrounding Mr. Boyd's efforts to exhaust Grievance EA-16-01463. Thus, Mr. McArthur did not provide any substantive testimony to support Mr. Boyd's position on exhaustion.

Defendants called one witness, Shelly Byers ("Ms. Byers"), the Medical Grievance Coordinator for Mr. Griffin, and the ADC employee who was personally involved in reviewing the appeal documents Mr. Boyd mailed to Mr. Griffin challenging Mr. Rechcigl's decision on Grievance EA-16-01463.[5]

During the hearing, Mr. Boyd did not introduce any documents into evidence. I asked Mr. Boyd and Defendants' counsel, Ms. Michelle Odum, if they had any objection to me introducing into evidence two documents, marked Court's Exhibits 1 and 2.[6] They both responded, "No," and those two documents were admitted into evidence.

The first page of Court's Exhibit 1 is the "Declaration of Tammy Kimble,"

---

[5]It is *undisputed* that Mr. Boyd signed, dated, and put his ADC number on Attachment II and included that document in the envelope he mailed to Mr. Griffin, along with Attachment IV. *See Court's Ex. 2 at 2.* Attachment II is *not* one of the documents Mr. Boyd was required to submit as part of his appeal, but there was no harm in him including it. Mr. Boyd dated Attachment II "12-7-16," and he testified that it was on that date he placed his appeal papers in the EARU mailbox for delivery to Mr. Griffin.

According to Mr. Boyd's testimony, those papers *included* the Unit Level Grievance (Attachment I), along with Attachment II and Attachment IV. According to Ms. Byers's testimony, the appeal papers Mr. Boyd mailed to Mr. Griffin, on December 7, 2016, contained only Attachment II and Attachment IV – not Attachment I.

[6]Both of these Exhibits are attached to this Recommended Disposition as part of Attachment B.

the Assistant Health Services Administrator at the EARU between October and December of 2016. Attached to her Declaration are *copies* of the following documents: (1) Attachment I, Mr. Boyd's fully completed Unit Level Grievance Form; (2) Attachment II, "Acknowledgment or Rejection of Unit Level Grievance," which reflects that, because Mr. Boyd's "Grievance is of a medical nature [it] has been forwarded to the Health Services Administrator [Mr. Rechcigl] who will respond"; and (3) Attachment IV, which reflects Mr. Rechcigl's "Health Services Response to Unit Level Grievance."

Ms. Kimble states in her Declaration that "[t]he original (Attachment I) was returned to the inmate [Mr. Boyd] along with the unit response [written by Mr. Rechcigl on Attachment IV]."

After the original "ink versions" of these documents were returned to Mr. Boyd on December 6, 2016, he completed the lower portion of Attachment IV, where he stated the reasons he disagreed with Mr. Rechcigl's decision. *Everyone agrees* that, on December 7, 2016, Mr. Boyd mailed Attachment II and Attachment IV to Mr. Griffin. The only disputed question of fact is whether Mr. Boyd also included Attachment I among the appeal documents he mailed to Mr. Griffin.

The first page of Court's Exhibit 2 is the "Declaration of Shelly Byers," the Medical Grievance Coordinator for Mr. Griffin. Attached to her Declaration are the

following documents which she found in the appeal file she maintained for Grievance EA-16-01463: (1) a copy of Attachment II, the "Acknowledgment or Rejection of Unit Level Grievance," which reflects Mr. Boyd's signature and ADC number, along with the date he signed the form on December 7, 2016; (2) a copy of Attachment IV, which includes Mr. Rechcigl's "response" denying the grievance and Mr. Boyd's "reasons" for appealing that decision; and (3) a copy of Attachment V (captioned "Acknowledgment of Grievance Appeal or Rejection of Appeal"), which reflects that Mr. Boyd's appeal of EA-16-01463 has been rejected because (a) he failed to include Attachment I, the Unit Level Grievance Form, in his appeal papers; and (b) he did not include his name, ADC number, and date *on Attachment IV*.

Ms. Odum marked and moved to introduce into evidence Defendants' Exhibits 1 and 2.[7] I asked Mr. Boyd if he had any objections to the admission of those documents into evidence and he responded, "No."

The first page of Defendants' Exhibit 1 is a copy of Attachment V, which Ms. Byers located in Mr. Boyd's grievance file. Affixed to Attachment V is the original yellow post-it note reflecting Ms. Byers's and her assistant's handwritten notations,

---

[7] Both of these Exhibits are attached to this Recommended Disposition as part of Attachment B.

which they made immediately after reviewing Mr. Boyd's grievance appeal papers on or about December 22, 2016. This original post-it note contained the following handwritten notations: (1) "No Attachment I, No Name, Date or ADC#," written by Ms. Byers's assistant; and (2) "Reject 12-22-16 SB [the initials of Shelly Byers]," written by Ms. Byers. Defendants' Exhibit 1 also includes the fully completed Attachment II and Attachment IV. However, it does *not* include Attachment I, the document that the contemporaneous notations reflect was *not* among the appeal papers Mr. Boyd mailed to Mr. Griffin.

Defendants' Exhibit 2 is a blank quadruplicate set of "Unit Level Grievance Form (Attachment I)." At the bottom of that document, it reflects where the four pages go after the Form is completed: "YELLOW & PINK [copies] – Inmate Receipts; BLUE – Grievance Officer; ORIGINAL – Given back to Inmate After Completion of Step One and Step Two."

Based on the routing instructions at the bottom of Defendants' Exhibit 2, when Mr. Boyd mailed his appeal of Grievance EA-16-01463 to Mr. Griffin, on December 7, 2016, he should have had in his possession the original "ink versions" of Attachment I and Attachment IV (*see* Ms. Kimble's Declaration) *and* the yellow and pink copies of Attachment I.

At the conclusion of the April 17, 2019 evidentiary hearing, I made a number

9

of findings of fact from the bench, which supplement the ones contained in this Recommended Disposition. *See Doc. 87 at 109-119.* Those supplemental findings of fact, marked Attachment A, are incorporated herein and made a part hereof.

All of the previously described exhibits, which were introduced into evidence during the April 17, 2019 hearing, can be found in Attachment B to this Recommended Disposition.

## II. Findings of Fact

### A.    Did Mr. Boyd Include Attachment I Among the Appeal Papers He Mailed to Mr. Griffin?

Mr. Boyd was allowed to testify first. He clearly and unequivocally stated that, at the time he mailed his appeal papers to Mr. Griffin, on December 7, 2016, *he had in his possession Attachment I, and he placed that document, along with Attachment II and Attachment IV, in an envelope and mailed all of those documents to Mr. Griffin.*[8] His testimony was *consistent with* the following statement in his "Brief on Claims of Exhaustion," filed on March 19, 2019:

---

[8]The inmate appeal instructions on Attachment IV only required Mr. Boyd to mail Mr. Griffin Attachment I and Attachment IV. Mr. Boyd also included Attachment II, perhaps because he saw the lines for a "signature, date, and ADC number," and concluded he should complete that information and include it in his appeal papers. He did not complete those same lines on Attachment IV because they were at the top of the back side of Attachment IV where they were difficult to find *and* the instructions on Attachment IV said *nothing* about an inmate needing to provide that information on Attachment IV in order for the appeal to be deemed complete and submissible.

> On 12-7-16 Plaintiff filed his appeal to Defendant Rechcigl's decision by placing the original grievance [Attachment I], and Defendant Rechcigl's response [Attachment IV] (that contained Plaintiff's appeal) in the Unit Mailbox addressed to Director of Medical Affairs [Mr. Griffin] in accordance with policy.

*Doc. 75 at 1.*

Ms. Byers, the Medical Grievance Coordinator for Mr. Griffin, was the only witness called by Defendants. She testified that, in preparation for this evidentiary hearing, she located and pulled Mr. Boyd's file on his appeal of Grievance EA-16-01463 so that she could determine the documents that he submitted with his appeal. On Attachment V, the form captioned "Acknowledgement of Grievance Appeal or Rejection of Appeal" (Defendants' Exhibit 1), she found *the original yellow post-it note on which she had written "Reject" followed by her initials "SB" and the date "12-22-16."* Above her handwriting appears the handwriting of her assistant, which reflects that "Attachment I," the Unit Level Grievance, was *not* included among the documents Mr. Boyd mailed to Mr. Griffin to complete the final step in his appeal of Grievance EA-16-01463. Ms. Byers testified that she did *not* find Attachment I among the documents in Mr. Boyd's grievance appeal file for EA-16-01463, a result that she expected based on the original contemporaneous handwritten notations on the yellow post-it note.

According to Ms. Byers, when her office receives inmate grievance appeal

papers, her assistant initially reviews those documents to ensure that the inmate has included Attachment I and Attachment IV, and signed, dated, and provided his or her ADC number on Attachment IV.

Ms. Byers testified that, if there are any procedural deficiencies in the appeal papers, her assistant notes them on a post-it note, which is placed on Attachment V and later reviewed by Ms. Byers. If she agrees with the noted deficiencies, Ms. Byers writes "Reject" on the post-it note and then dates and initials the post-it note. Her assistant then completes Attachment V and checks the appropriate boxes that reflect the procedural deficiency or deficiencies that resulted in the appeal being rejected on procedural grounds.

Ms. Byers admitted that she has no present independent recollection of reviewing Mr. Boyd's appeal documents, on or about December 22, 2016. However, based on the handwritten notes, *on the original yellow post-it note that was still affixed to Attachment V in Mr. Boyd's grievance file*, she testified that she knows she rejected the appeal because there was "no Attachment I" *and* "no name, date or ADC#" on Attachment IV. Consistent with Ms. Byers's testimony, the boxes checked on Attachment V reflect that Mr. Boyd's appeal was rejected because he failed to send Mr. Griffin the "Unit Level Grievance Form (Attachment I)" and he did not include his "name, ADC#, and/or date" on Attachment IV.

Ms. Byers was a very credible witness. After hearing her testimony, and carefully reviewing the contemporaneous handwriting on the yellow post-it note (*see* Attachment B, Defendants' Exhibit 1), I accept and believe Ms. Byers's testimony over the conflicting testimony of Mr. Boyd.

I did not find Mr. Boyd to be a particularly credible witness. In his appeal of Judge Miller's decision granting Defendants' Motion for Summary Judgment on the exhaustion issue, Mr. Boyd took the position before the Eighth Circuit that he *either* submitted "all of the required attachments [including Attachment I] at the appeal stage [to Mr. Griffin]" *or* he submitted "whatever attachments were available to him after officials failed to return some forms [presumably Attachment I] to him with the decision on the grievance." *Boyd,* 746 Fed. Appx. at 600. Those are two factually distinct and mutually inconsistent positions that required Mr. Boyd to fish or cut bait at the evidentiary hearing on whether he did or did not include Attachment I in the appeal papers he mailed to Mr. Griffin.

According to Mr. Boyd's clear and unequivocal sworn testimony during the evidentiary hearing, *he in fact mailed Mr. Griffin Attachment I*, along with Attachments II and IV. Mr. Boyd offered *no testimony* suggesting that he did not have Attachment I in his possession on December 7, 2016, or that anyone took Attachment I from him, making it impossible for him to include that document in

the appeal papers he mailed to Mr. Griffin.

However, after hearing Ms. Byers's strong and unequivocal testimony (which was directly supported by the contemporaneous handwriting on the yellow post-it note) that Attachment I was *not* among the documents Mr. Boyd mailed to Mr. Griffin, Mr. Boyd stated in his closing argument that a guard or another ADC employee must have opened the envelope, after he placed it in the mail, and removed Attachment I. He argued "they" might have been motivated to open his mail and remove Attachment I because, in the last two years, he has filed numerous other grievances complaining about inadequate medical care. Mr. Boyd's demeanor, and the way he spontaneously offered this *new theory* to explain why Attachment I was *not* among his appeal papers, created the strong impression he was making up his story as he went along. None of this helped his credibility.

The inmate appeal instructions on Attachment IV specifically advised Mr. Boyd that "you may appeal this decision [by Mr. Rechcigl] within five working days by filling in the information requested below [the reasons why Mr. Boyd disagreed with Mr. Rechcigl's decision] and mailing it [Attachment IV] to the Deputy Director for Health & Correctional Programs [Mr. Griffin] along with the Unit Level Grievance Form [Attachment I]." *See Court's Ex. 2 at 3.* Based on those clear and specific instructions, Mr. Boyd was on *actual notice* that he was required to mail

14

Attachment I (the Unit Level Grievance) and Attachment IV (which contained Mr. Rechcigl's decision disposing of the grievance *and* Mr. Boyd's reasons for appealing that decision) to Mr. Griffin in order to properly complete the final step in the exhaustion process.

I find that Mr. Boyd did not include Attachment I in the appeal documents he mailed to Mr. Griffin, even though he had that document in his possession. I further find that this resulted in his appeal being rejected on procedural grounds, in accordance with the ADC's exhaustion policy. *See* AD 14-16 § IV(G)(2).

**B.    Should Mr. Boyd's Grievance Appeal Have Been Rejected on the Alternative Ground That He Failed to Sign, Date and Place His ADC Number on Attachment IV?**

Attachment V to Defendants' Exhibit 1 reflects that Mr. Boyd's appeal also was rejected because he did not include his "name, ADC#, and/or date" on Attachment IV. In response to questions I asked Ms. Byers during the evidentiary hearing, *she admitted that*: (1) the inmate appeal instructions on Attachment IV do *not* state anything about an inmate being required to sign, date and put his ADC number on Attachment IV; (2) the length of the "Response" to the Unit Level Grievance on Attachment IV often shifts the lines, where the inmate is supposed to sign his name, and provide his ADC number and the date, to the top of the *back side* of Attachment IV, a location that is difficult for an inmate to find; (3) the lack of

instructions about that information *being required,* and the only clue about the need to provide it often being found on lines that are hidden on the *back side* of Attachment IV, misleads inmates and thwarts them from providing that information on Attachment IV; and (4) the inmate appeal instructions on Attachment IV need to be revised to make this requirement clear and specific so that prisoners are on *actual notice* they must sign the form and provide their ADC number and the date on lines that are obvious and easy to see. She testified that the ADC is aware of this problem and it is in the process of revising the inmate appeal instructions on Attachment IV to take care of this issue.

Finally, Ms. Byers testified that, *because Mr. Boyd did sign, date and provide his ADC number on Attachment II, which he included in his appeal documents*, she should have accepted Attachment II as "substantial compliance" with providing that information on Attachment IV. Thus, she admitted the box on Attachment V should *not* have been checked to reflect that Mr. Boyd's failure to provide that information on Attachment IV was an alternative ground for rejecting his appeal.

To the extent the ADC considers an inmate's signature, ADC number, and date to be *essential* to the proper completion of Attachment IV, with the penalty for not doing so being the rejection of the appeal, I conclude this requirement is *not* legally enforceable, as part of the mandatory exhaustion process, *unless* the inmate

appeal instructions on Attachment IV are revised to *explicitly state that* "an inmate must sign, date, and include his ADC number on the appropriate lines that are specifically designated below, or on the back side of Attachment IV, at the top of the page."

Because no such instructions are currently contained in Attachment IV, and were not included on that document at the time Mr. Boyd completed it, I find that he was "misled" and "thwarted" in his efforts to satisfy that requirement at the final step in the exhaustion process.[9]  Accordingly, I find that Mr. Boyd's failure to sign his name, and provide his ADC number and the date on Attachment IV, should *not* have been used by Ms. Byers as *one of the grounds* for rejecting his appeal.[10]

### III.   Conclusions of Law

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust

---

[9]A prisoner is required to exhaust only 'such administrative remedies as are available.'" *Townsend v. Murphy,* 898 F.3d 780, 783 (8th Cir. 2018). An administrative remedy is *not* available: (1) when the process "operates as a simple dead end," with officials unable or consistently unwilling to provide any relief; (2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use" and "no ordinary prisoner can discern or navigate it"; or (3) when prison officials thwart inmates from taking advantage of a grievance process through "machination, misrepresentation, or intimidation." *Ross v. Blake,* 136 S. Ct. 1850, 1859-60 (2016).

[10]However, as I have previously explained, the inmate appeal instructions on Attachment IV explicitly stated that Mr. Boyd must include Attachment I and Attachment IV in the appeal papers he mailed to Mr. Griffin. *See Court's Ex. 2 at 3.* Because he failed to include Attachment I, it properly constituted a procedural deficiency that resulted in his appeal being rejected. Thus, Mr. Griffin was deprived of the opportunity to reach and decide the merits of Mr. Boyd's claim.

their administrative remedies before filing a § 1983 action: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 88-91 (2006).

The PLRA requires prisoners to: (1) fully and properly exhaust their available administrative remedies as to each claim in the complaint; and (2) complete the exhaustion process before filing an action in federal court. *Jones,* 549 U.S. at 211, 219-20, 223-24; *Woodford*, 548 U.S. at 93-95; *Burns v. Eaton,* 752 F.3d 1136, 1141-42 (8th Cir. 2014); *Johnson v. Jones,* 340 F.3d 624, 626-28 (8th Cir. 2003).

Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218. Administrative exhaustion "means using *all steps* that the agency holds out, and doing so *properly* so that the agency addresses the issues on the merits." *Woodford*, 548 U.S. at 90

(emphasis added); *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (prisoner's remedies are exhausted "when [the] inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits"); *King v. Iowa Department of Corrections*, 598 F.3d 1051, 1052-53 (8th Cir. 2010) (finding improper exhaustion when a prisoner failed to properly appeal a grievance). Thus, to satisfy the PLRA, a prisoner must *fully and properly* comply with the exhaustion requirements of the incarcerating facility before he can file a § 1983 action.

To fully and properly exhaust administrative remedies related to a medical issue, an ADC prisoner must file: (1) a "Step One" informal resolution raising his medical issue with the designated unit-level problem-solver; (2) a "Step Two" formal unit-level grievance with the Health Services Administrator ("HSA"); and (3) a "Step Three" appeal to the ADC Deputy Director for Health and Correctional Programs. *See* AD 14-16 § IV(E)-(G).

A Step Three appeal requires an inmate to file with the Deputy Director:

**[T]he original Unit Level Grievance Form (Attachment I),** which describes the matter originally grieved, and either the Warden/Center Supervisor Decision Form (Attachment III), the Health Services Response to Unit Level Grievance (Attachment IV), or the Acknowledgment or Rejection of Unit Level Grievance (Attachment II) if the inmate is asserting the grievance was improperly rejected or if the inmate did not receive a response or extension within the timeframe. If these two (2) pages are not submitted with the inmate's appeal portion completed, the appeal may be returned to the inmate as rejected.

> To complete the appeal, the inmate must state a reason for disagreeing, and must date, sign and write the inmate's ADC number on the attachment being appealed.

AD 14-16 § IV(G)(2) (emphasis added).

The Court concludes that, by failing to include Attachment I in the documents he mailed to Mr. Griffin on December 7, 2016, Mr. Boyd failed to fully and completely exhaust his administrative remedies as he was required to do under the PLRA and AD 14-16. *See Woodford*, 548 U.S. at 83-84 (a prisoner cannot satisfy the PLRA's exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal").[11]

## IV. Defendants' Pending Motion for Summary Judgment

On June 2, 2017, Defendants filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Facts, based on Mr. Boyd's failure to exhaust his administrative remedies. *Docs. 34, 35 & 36.* On June 13, 2017, Mr. Boyd filed his Response. *Doc. 39.* That fully joined Motion remains pending and is now ripe for decision.

---

[11]Boyd also attempts to rely on several grievances that he filed *after* initiating this § 1983 action on January 10, 2017. As previously mentioned, a prisoner must fully and properly complete all stages of the prison's exhaustion process *before* he commences a lawsuit in federal court. *Johnson,* 340 F.3d at 627 (explaining that, under the PLRA, "an inmate must exhaust administrative remedies *before* filing suit in federal court"). Accordingly, none of Boyd's later-filed grievances can be used to support exhaustion of the claim he is asserting in this action.

Based on the evidence presented during the April 17, 2019 evidentiary hearing, and my findings of fact and conclusions of law contained in this Recommended Disposition, Defendants' Motion for Summary Judgment should be granted and all of Mr. Boyd's claims should be dismissed, without prejudice, based on his failure to exhaust his administrative remedies at the third and final step of his appeal of Grievance EA-16-01463.

## V. Conclusion

IT IS THEREFORE RECOMMENDED THAT Defendants' Motion for Summary Judgment *(Doc. 34)* be GRANTED, and this case be DISMISSED, WITHOUT PREJUDICE.

DATED this 3rd day of May, 2019.


_____
UNITED STATES MAGISTRATE JUDGE

21